UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-378-FDW

| | |
|---|---|
| LEONARD A. GIVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| DAVID AARON, et al., ) | |
| ) | |
| Defendants. ) | |

THIS MATTER comes before the Court on a Motion for Summary Judgment, filed by Defendants David Aaron, Timothy Reynolds, Louis Griffin, Matthew Boone, Manuel Zaccheus, James Bird, and John Hunt. (Doc. No. 68).

## I.  BACKGROUND

### A.  Procedural Background

Pro se Plaintiff Leonard A. Givens, a North Carolina state court inmate currently incarcerated at Brown Creek Correctional Institution in Polkton, North Carolina, filed this action on July 9, 2014, pursuant to 42 U.S.C. § 1983. Plaintiff asserts, and Defendants deny, that Defendants sexually assaulted Plaintiff when they searched him for a cell phone that he had hidden in a body cavity on December 12, 2013, while Plaintiff was incarcerated at Lanesboro Correctional Institution in Polkton, North Carolina. Plaintiff originally named as Defendants David Aaron (Correctional Captain at Lanesboro), R. David Mitchell (Administrator at Lanesboro), John Reynolds (Lieutenant at Lanesboro), and five "John Does," identified as correctional officers at Lanesboro and members of the Prison Emergency Response Team

1

("PERT").

On March 10, 2015, the Court conducted a frivolity review, dismissing all claims against David Mitchell, but allowing Plaintiff's claims against the other defendants to proceed. (Doc. No. 14). In discovery, Defendants identified the names of the correctional officers involved in the December 12 incident with Plaintiff, and David Aaron, Timothy Reynolds, Louis Griffin, Matthew Boone, Manuel Zaccheus, James Bird, John Hunt, and Anthony Lewis were subsequently added as Defendants. See (Doc. No. 54). On September 10, 2015, and December 17, 2015, Defendants Aaron, Reynolds, Griffin, Boone, Zaccheus, Bird, and Hunt filed Answers to Plaintiff's Complaint and Amended Complaint, denying all allegations of wrongdoing and asserted numerous defenses and immunities. (Doc. Nos. 41; 55). Defendant Anthony Lewis has not been served with the Complaint, as his summons was returned as unexecuted on September 3, 2015. (Doc. No. 40).

On March 31, 2016, Defendants Aaron, Reynolds, Griffin, Boone, Zaccheus, Bird, and Hunt filed the pending summary judgment motion. (Doc. No. 68). On April 4, 2016, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 71). Plaintiff filed a response to the summary judgment motion on April 26, 2016. (Doc. No. 73). Defendants filed a reply to Plaintiff's response on April 29, 2016. (Doc. No. 74).

**B.    Factual Background**

To support the summary judgment motion, Defendants rely on all pleadings, exhibits, and other documents incorporated into the record, including the moving Defendants' affidavits. See (Doc. No. 69-1: Aaron Aff.; Doc. No. 69-2: Beaver Aff.; Doc. No. 69-3: Bird Aff.; Doc. No. 69-

4: Hunt Aff.; Doc. No. 69-5: Zaccheus Aff.; Doc. No. 69-6: Griffin Aff.; Doc. No. 69-7: Boone Aff.; Doc. No. 69-8: Ex. 8, Defs. Discovery Responses; Doc. No. 69-9: Ex. 9, Acknowledgment). Defendants' evidence on summary judgment shows the following:

Plaintiff was admitted to North Carolina Department of Public Safety ("NCDPS"), Division of Adult Correction, in 2012 after being convicted as a habitual offender. He has been housed in different facilities, including Lanesboro, which is a close-custody, high-security prison. (Doc. No. 69-1 at ¶¶ 4-5). Since his admission to NCDPS, Plaintiff has incurred several infractions, including infractions for weapon possession and STG (gang-related) activity. (Id. at ¶ 6; see also Doc. No. 69-1 at 8: Ex. A to Aaron Aff.).

On December 12, 2013, while Plaintiff was in custody at Lanesboro Correctional Institution and housed on Moore Unit, correctional officers began to suspect that Plaintiff had a cell phone in his possession. (Doc. No. 69-1 at ¶¶ 7-8). Per NCDPS policy, inmates are allowed to be searched, randomly or based on suspicion, for contraband. (Id. at ¶ 9; see also Doc. No. 69-1 at 10: Ex. B to Aaron Aff.). Searches of this nature are necessary to protect staff, other inmates, and the public. (Doc. No. 69-1 at ¶ 9). Cell phones are considered contraband and pose a serious threat to a facility's security, as well as to the public, because inmates can use to them to contact members of the public, including fellow gang members, to plan and engage in unsafe or criminal activity. (Id.).

Due to security concerns, the facility decided to use a "cell sense" device to determine if Plaintiff had a cell phone in his possession. (Id. at ¶ 10). A "cell sense" device is specifically designed to detect the presence of cell phones concealed by inmates on their body or in body cavities. (Id. at ¶ 8). When Plaintiff walked around the device on the Unit, the device "alerted," meaning that the device detected a cell phone on Plaintiff's person. (Id. at ¶ 11). When the

3

device alerted, staff asked Plaintiff to submit to a search, which he refused. (Id.). Based on his refusal to submit to a search, Plaintiff was brought to a more private area of the facility, where staff again asked him if he would consent to be searched. Plaintiff again refused. (Id.).

In response to Plaintiff's continued refusal to consent to a search, correctional officers at Lanesboro and members of the Prison Emergency Response Team ("PERT") were assembled to search Plaintiff's person for a cell phone. (Id. at ¶ 12). The PERT team is a highly trained tactical unit which provides specialized assistance to NCDPS's prison facilities. (Id.). Because of Plaintiff's repeated verbal refusal to voluntarily consent to the search, a decision was made to record the incident as there was a possibility that force might be required. (Id.).

Defendant Aaron, who was a Unit Manager on Moore Unit at the time, operated the camera during the search. He also provided directives to the officers who physically conducted the search. (Id. at ¶ 13). Several officers were physically involved in the search, including Defendants Griffin, Boone, Zaccheus, Bird, and Hunt. (Id.). Defendant Timothy Reynolds was the Officer in Charge on the date in question. He was present during the search but did not physically participate in the search. (Id.). Before the search and while in the receiving area, Captain Reynolds asked Plaintiff if he would voluntarily consent to a search. Plaintiff refused. (Id.).

Defendants have attached the video footage as Exhibit C to Defendant Aaron's Affidavit. (Id. at ¶ 14; Doc. No. 69-1 at 22: Ex. C to Aaron Aff.). As can be seen from the video, the officers gently placed Plaintiff on the ground. His clothes were thereafter cut off (down to his boxers) so that he could be frisked/patted down for metal objects and contraband. After this was completed, Plaintiff was assisted from the ground still wearing his boxer shorts. Because Plaintiff had a sock-type contraption tied or somehow connected to his boxers, a decision was

4

made at that time to remove his boxers. After Plaintiff's boxers were removed, he was asked to squat and cough, which is a method used by officers to determine if inmates are concealing objects in body cavities.

The video shows that, after Plaintiff was asked to squat and cough, his boxers were placed back on him and he was, thereafter, escorted around a cell sense device located near the receiving area. (Id. at ¶ 15). The device again alerted, indicating the presence of a cell phone. (Id.). At this point, Plaintiff was taken to a dry cell, which is a cell where the plumbing and toilet are temporarily disabled so that inmates are not able to destroy or flush contraband hidden in body cavities. Inmates are monitored while in dry cells. (Id. at ¶ 16). After spending a period of time in the dry cell, Plaintiff retrieved or presumably excreted a cell phone, which he produced to custody staff. (Id. at ¶ 17).

In their affidavits, Defendants state that the search was conducted professionally and in accordance with NCDPS policy. (Doc. No. 69-1 at ¶ 19; Doc. No. 69-3 at ¶¶ 5-6; Doc. No. 69-4 at ¶¶ 5-6; Doc. No. 69-7 at ¶¶ 5-6; Doc. No. 69-6 at ¶¶ 5-6; Doc. No. 69-5 at ¶¶ 5-6). Defendants assert that, while the search required certain Defendants to place their hands on Plaintiff at times, no officer sexually assaulted or engaged in appropriate conduct at any time. (Doc. No. 69-1 at ¶ 19; Doc. No. 69-3 at ¶¶ 5-6; Doc. No. 69-4 at ¶¶ 5-6; Doc. No. 69-7 at ¶¶ 5-6; Doc. No. 69-6 at ¶¶ 5-6; Doc. No. 69-5 at ¶¶ 5-6). Defendants further assert that no force was used on Plaintiff at any time during the search. (Doc. No. 69-1 at ¶ 19; Doc. No. 69-3 at ¶¶ 5-6; Doc. No. 69-4 at ¶¶ 5-6; Doc. No. 69-7 at ¶¶ 5-6; Doc. No. 69-6 at ¶¶ 5-6; Doc. No. 69-5 at ¶¶ 5-6). Facility staff investigated the incident and determined that the officers acted appropriately and that Plaintiff's allegations of alleged sexual misconduct were unfounded. (Doc. No. 69-1 at ¶ 20; Doc. No. 69-2 at ¶ 4).

As stated above, Plaintiff alleges that some of the named Defendants touched him inappropriately and in a sexual manner while searching for a cell phone on his person. In response to the summary judgment motion, Plaintiff has presented his own affidavit, as well as statements of prison policy regarding searches, several declarations signed by other inmates, and Defendants' responses to his discovery requests. In his affidavit, and in response to the summary judgment motion, Plaintiff states that, during the cell phone search, Defendant Bird "stuck his hands inside plaintiff's boxers, grabbed Plaintiff's penis and began stroking plaintiff's penis in an up-and-down motion" and then "began to fondle and squeeze plaintiff's testicles," and that Defendant Lewis "moved his hand further between plaintiffs legs to his anus" in a sexually inappropriate manner. See (Doc. No. 73-1).

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3.

6

The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment protects inmates from repetitive and harassing searches, and from sexual abuse. Schwenk v. Hartford, 204 F.3d 1187, 1196-97 (9th Cir. 2000). Rape or other sexual assault perpetrated by a guard against an inmate is offensive to human dignity and violates the Eighth amendment regardless of lasting physical injury. Id.

The Court finds that Defendants are entitled to summary judgment because the undisputed evidence on summary judgment shows that Defendants did not touch Plaintiff in an

7

inappropriate manner while they searched his body for a cell phone on December 12, 2013. Here, the incident was recorded on video, and no reasonable interpretation of the video recording could lead a fact-finder to conclude that Defendants did anything other than a routine and necessary pat down of Plaintiff's body—a pat down that did not entail any sexual or inappropriate touching whatsoever. Moreover, Defendants have presented evidence showing that the search was necessary. The cell sense device had indicated the presence of a cell phone on or in Plaintiff's body, and Plaintiff would not consent to or voluntarily produce the phone. Thus, it was entirely reasonable for Defendants to deem it necessary to search the areas near Plaintiff's body cavity—that is, his genital area and buttocks. Finally, it is undisputed that Plaintiff did, in fact, have in his possession and hidden in a body cavity, a cell phone that he extracted from his body.

As noted, in his affidavit in response to the summary judgment motion, Plaintiff states that Defendant Bird "stuck his hands inside plaintiff's boxers, grabbed Plaintiff's penis and began stroking plaintiff's penis in an up-and-down motion" and then "began to fondle and squeeze plaintiff's testicles," and that Defendant Lewis "moved his hand further between plaintiffs legs to his anus" in a sexually inappropriate manner. See (Doc. No. 73-1). The record, however, including the unambiguous recording of the incident, reveals that Plaintiff was searched—not sexually assaulted. In other words, the video showing the officers' search of Plaintiff's person "so utterly discredit[s]" Plaintiff's version of the events that no jury could believe Plaintiff's version of events.[1] Scott v. Harris, 550 U.S. 372, 380 (2007).

---

[1] In his opposition to the summary judgment motion, Plaintiff states that another recording of the incident exists which, according to Plaintiff, would create an issue of fact. Defense counsel states, however, that counsel has produced the only recording of the incident known to exist at this time. Furthermore, Defendants contend that the video more than sufficiently depicts the

8

Moreover, to the extent that Plaintiff's claim against Defendants is based merely on the fact that he was patted down, frisked, and searched, Plaintiff's claim cannot survive summary judgment. In cases involving searches, courts have repeatedly ruled that allegations of being searched (even strip-searched) are not sufficient to state or forecast a cruel and unusual punishment claim. See e.g., Florence v. Bd. of Chosen Freeholders of the Cnty. of Burlington, 132 S. Ct. 1510, 1517 (2012). This is so even where an inmate alleges that his private parts were touched during the search. For instance, in Morrison v. Cortright, 397 F. Supp. 2d 424, 425 (W.D.N.Y. 2005), the court granted summary judgment to the defendants where the plaintiff inmate claimed that an officer ran his middle finger between the plaintiff's "buttocks in a wiping fashion causing the plaintiff to urinate on his self." Id. at 424. The plaintiff also asserted that the officer "rubbed up against [plaintiff's] buttocks with his private part during the strip frisk." Id. The court concluded that the plaintiff's allegations were insufficient as a matter of law, stating that "[r]egardless of [the defendant officer's] motivation, though, this one incident simply was not 'objectively, sufficiently serious' enough to give rise to a constitutional claim." Id. at 425. See also Boddie v. Schnieder, 105 F.3d 857 (2d Cir. 1997) (affirming the grant of summary judgment to the defendant officers despite the plaintiff inmate's allegations that he was verbally harassed, touched, and pressed against by an officer without his consent, finding that "the sexual abuse [plaintiff] claims to have experienced was not serious enough to constitute cruel and unusual punishment").

Finally, the Court notes that, in opposing the summary judgment motion, Plaintiff has submitted declarations of other inmates, attesting that Defendants' search of Plaintiff violated

---

incident, and the Court agrees that the video clearly shows the entire incident. Furthermore, as Defendants note, Plaintiff himself asserts that the two cameras were only ten inches apart.

NCDPS policy regarding searches. To the extent that the search somehow violated prison policy, violations of prison policy alone are not sufficient to state a constitutional violation under Section 1983. See Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013). Thus, Plaintiff's submission of other inmates' declarations, stating that Defendants violated NCDPS policy during their search for a cell phone on Plaintiff's person, also fails to raise a genuine dispute of material fact as to whether Defendants violated Plaintiff's constitutional or other federal rights.

In sum, Plaintiff has simply not raised a genuine dispute of material fact as to whether any of the named Defendants touched him sexually or in an inappropriate manner while they searched his person, or that any of the other named Defendants failed to adequately protect him for the touching.[2] Thus, Defendants are entitled to summary judgment.[3]

## IV. CONCLUSION

In sum, the Court finds that Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants violated any of his constitutional or federal rights, and Defendants are therefore entitled to summary judgment.

---

[2] To the extent that Plaintiff seeks money damages from Defendants in their official capacities, recovery of money damages is not allowed in Section 1983 claims against state officials. Courts have ruled that claims for money damages are not allowed against state officials as they are not considered "persons" capable of being sued for money damages pursuant to 42 U.S.C. § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989). Eleventh Amendment and sovereign immunity also prohibit official capacity claims against state officials for money damages. While Eleventh Amendment and common law sovereign immunity do not bar official capacity claims for prospective declaratory and injunctive relief against state officials, Plaintiff's claims for injunctive relief are moot. Furthermore, although Defendant Lewis was never served with process, he is entitled to summary judgment for the same reasons the Court is granting summary judgment to the moving Defendants.

[3] Defendants also raise the defense of qualified immunity in their summary judgment motion. Because the Court finds no constitutional violation in the first instance, the Court does not address whether Defendants are entitled to qualified immunity.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 68), is **GRANTED**, and this action is dismissed with prejudice.

2. The Clerk is respectfully instructed to terminate this action.

Frank D. Whitney
Chief United States District Judge